IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ELIZABETH D. MANUEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV8 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

Plaintiff, Elizabeth Manuel, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed her application for Supplemental Security Income ("SSI") on November 28, 2007, initially alleging a disability onset date of October 18, 2002. (Tr. 173-77.)[2]  She

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #8].

1

had previously filed an application in May 2004 that was denied by an Administrative Law Judge on October 26, 2007 ("the 2004 claim"). (Tr. at 28, 88-106.) Plaintiff subsequently filed the present application ("the 2007 claim"). Her application on the 2007 claim was denied initially (Tr. at 110, 117-21) and upon reconsideration (Tr. at 111, 125-29). Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 130-32.) Plaintiff, along with her non-attorney representative and an impartial vocational expert, attended the subsequent hearing on December 16, 2009. (Tr. at 9.) At the hearing, Plaintiff amended her alleged onset date to November 28, 2007, so that the present 2007 claim included only time after the previously-adjudicated 2004 claim. (Tr. at 9, 24.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 17) and, on November 9, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

In rendering her disability determination as to the 2007 claim, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant has not engaged in substantial gainful activity since November 28, 2007, the application date (20 C.F.R. 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: Cervical degenerative disc disease, status-post fusion surgery; headaches; chronic obstructive pulmonary disease; asthma; bilateral carpal tunnel syndrome; depression with anxious features (20 C.F.R. 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).
> . . . .

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity perform light work as defined in 20 C.F.R. 416.967(b) except she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; she is to avoid exposure to temperature extremes, pollutants, gas, dusts, fumes, lung irritants, and poor ventilation; she can only perform non-complex, routine, repetitive tasks; she cannot perform assembly line work.

(Tr. at 11-13.)

The ALJ then considered Plaintiff's age, education, work experience, and the above residual functional capacity ("RFC") and determined that Plaintiff remained capable of performing her past relevant job as a spooling machine operator. The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 17.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.

3

1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: cervical degenerative disc disease, status-post fusion surgery; headaches; chronic obstructive pulmonary disease; asthma; bilateral carpal tunnel syndrome; and depression with anxious features. (Tr. at 11.) The ALJ then found at step three that these impairments did not meet or equal a disability listing. Accordingly, she assessed Plaintiff's RFC and determined that Plaintiff could perform light work with further

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

postural and pulmonary limitations. The ALJ also found Plaintiff could not perform assembly line work and was limited to non-complex, routine, repetitive tasks. (Tr. at 13.) Based on the vocational expert's testimony regarding the demands of her past relevant work, the ALJ determined at step four that Plaintiff was capable of returning to her past job as a spooling machine operator. Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. at 17.)

Plaintiff now challenges the ALJ's finding at step four of the sequential evaluation. Specifically, Plaintiff contends that the job of "spooling-machine operator," identified in the <u>Dictionary of Occupational Titles</u> ("DOT") by code 681.685-114, was not, in fact, the job she performed. Rather, Plaintiff contends that she was a "yarn winder," DOT code 681.685-154, a job requiring skills and exertional abilities beyond her RFC. (Pl.'s Resp. Br. [Doc. # 15] at 2-5.) Plaintiff notes that this is consistent with evidence presented in the adjudication of her 2004 claim. Plaintiff also argues that it was improper for the ALJ to consider this past job at all, regardless of its title, because the work took place more than fifteen years prior to her disability hearing.

In considering these contentions, the Court notes that in Plaintiff's prior hearing for adjudication of her 2004 claim, a different vocational expert testified that Plaintiff's past work as a spooling operator "is described under the title yarn winder as a primary title. The DOT code is 681.685-154. Again, it's medium and has an SVP of 3." (Tr. at 72.) Based on that testimony, the ALJ in the adjudication of the 2004 claim found that "claimant is unable to perform any past relevant work." (Tr. at 104.) Thus, the adjudication of the 2004 claim

7

included a finding in Plaintiff's favor at step four of the sequential evaluation process, but then ultimately concluded at step five that Plaintiff was nevertheless disabled because "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 105.) Although not explicitly stated as such, Plaintiff appears to be challenging the conflicting determination by the ALJ in the present case at step four that she "is capable of performing past relevant work." (Tr. at 17.)

Under Social Security Acquiescence Ruling 00-1(4), "where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, *SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances* when adjudicating a subsequent disability claim involving an unadjudicated period." AR 00–1(4) (S.S.A. Jan. 12, 2000) (emphasis added). This ruling is an acknowledgement of the decision of the Fourth Circuit in Lively v. Sec. of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir.1987), which noted that *res judicata* applies to Social Security disability cases and "prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final." The Lively decision was further clarified by the Fourth Circuit in Albright, in which the court explained:

> Rather than signaling a sea change in the law of preclusion, the result in Lively is instead best understood as a practical illustration of the substantial evidence rule. In other words, we determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence. To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency adjudications should carry considerable weight.

Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 477–78 (4th Cir.1999). While an ALJ must consider prior findings and conclusions that have become final, he or she is not bound to adopt those findings verbatim but must consider the prior findings and assign a weight to such findings. Id. The Social Security Administration issued Acquiescence Ruling 00–1(4) following the Lively and Albright decisions, promulgating the procedure an adjudicator must follow when there is a final decision by the ALJ or Appeals Council in a prior disability claim:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

AR 00–1(4) (S.S.A. Jan. 12, 2000) (emphasis added).

In this case, the ALJ found at step four that Plaintiff could perform her past relevant work, and therefore was not disabled. However, in the prior adjudication of the 2004 claim, the previous ALJ found at step four that Plaintiff could not perform her past relevant work. The ALJ in the present case did not address or acknowledge the prior inconsistent determination at step four. The reason for this change is not self-evident, but it appears to

be based on a change in the categorization of Plaintiff's prior work rather than any change in her condition. It may be that new and additional evidence presented by the vocational expert at the hearing on the present claim created a basis for making a different finding on that issue. However, Acquiescence Ruling 00-1(4) requires that the ALJ at least consider the prior finding as evidence and give it appropriate weight based on a consideration of the relevant factors. Because the ALJ did not address the prior ruling, this Court cannot review the ALJ's ultimate determination and cannot determine whether the ALJ weighed the prior adjudication in accordance with AR 00-1(4). Cf. Eatmon v. Colvin, 2014 WL 4285140 (E.D.N.C. August 29, 2014) (remanding case in light of AR 00-1(4) where "the ALJ's decision did not discuss the prior finding . . . much less discuss the appropriate weight due the finding considering the relevant facts and circumstances").[5] Therefore, in light of the ALJ's failure to follow the procedure required by Lively, Albright, and AR 00-1(4), and the resulting inability of this Court to review the decision as required, it appears that remand is required.[6]

---

[5] In reviewing the record in this case, the Court notes that it appears that the state agency consultant considered Albright and noted that the prior decision had been reviewed, that Vocational Rule 202.18 "was used as a framework," and that the prior findings were incorporated into the consultant's determinations. (Tr. at 394, 110). However, the ALJ did not adopt the state agency analysis in full and instead noted that "[t]he state agency consultants and the undersigned have determined, albeit under different rationales, that the claimant is not disabled." (Tr. at 17.) Thus, the ALJ explicitly adopted a different "rationale," but did not address Albright, AR 00-1(4), or most importantly, the inconsistent determination in the adjudication of the 2004 claim that Plaintiff could not perform her past relevant work.

[6] Because this issue was implicitly, but not explicitly, raised in Plaintiff's briefing, Defendant has not directly addressed Lively, Albright, or AR 00-1(4). Therefore, if Defendant believes there are additional considerations that would affect this determination, Defendant may request reconsideration of this recommendation.

The Court notes that Plaintiff also argues that it was improper for the ALJ to consider her work as a spooling operator because the work took place more than fifteen years prior to her disability hearing, based on Plaintiff's contention that the work took place between 1990 and 1993, while Plaintiff's hearing occurred in 2009. However, Plaintiff continued in the same or similar position at another employer until 2000, and it

IT IS THEREFORE RECOMMENDED that that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 9th day of February, 2015.

      /s/ Joi Elizabeth Peake
      United States Magistrate Judge

---

appears that the testimony of the vocational expert may have covered both positions. Defendant also contends that the 15-year period does not apply to the extent Plaintiff's prior position as a "spooling operator" was unskilled. However, this contention overlaps with the dispute regarding the proper identification of Plaintiff's prior work, as discussed above. Given the recommendation above, the Court need not resolve this issue further, as any determination regarding Plaintiff's past relevant work can be considered on remand.